NOT FOR PUBLICATION

"O"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE A. LIND,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security Administration,<br><br>    Defendant. | Case No. SACV 03-01499 AN<br><br>ORDER RE PETITION<br>FOR ATTORNEYS FEES<br>42 U.S.C. §406(b) |

## I. Background

Plaintiff's counsel, Manuel D. Serpa, an associate of Binder and Binder, P.C., ("Counsel"), has filed a petition for attorneys fees (dkt. #13) ("Petition") pursuant to 42 U.S.C. § 406(b). Counsel seeks an award of § 406(b) fees in the gross amount of $11,857.00, subject to an offset for the $3,000.00 in EAJA fees previously paid, resulting in a net award of $8,857.00 (Petition at 1-2.) The Petition is supported by Counsel's attached declaration and exhibits, which establish that, following a stipulated remand, the Social Security Administration ("SSA") awarded Plaintiff back benefits in the total amount

of $100,628.00[1]. The Petition and Counsel's recap of his time reports that he spent 22.4 hours of time representing Plaintiff in this case. However, as reflected in the detailed description of the work completed the total time spent was actually 22.5 hours of time. (Petition, Serpa Decl., ¶6, Ex. D). The Court will proceed with its review based upon 22.5 hours of time. The Commissioner has filed a response to the Petition with his analysis (dkt. #15). Counsel filed no reply.

## II. Discussion

**A. Standard of Review**

Under § 406(b), the Court may award a "reasonable" amount of attorneys fees to a successful claimant's counsel, but the fee cannot exceed 25 percent of the total of the past-due benefits awarded to the claimant.

In *Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S. Ct. 1817 (2002), the Supreme Court resolved a division among the circuits over the method used to calculate § 406(b) fees. The *Gisbrecht* majority found § 406(b) is designed to control, not displace, contingency fee agreements in social security cases. 535 U.S. at 793, 807. In doing so, the Court rejected the lodestar method[2] used in the Ninth Circuit and several other circuits as the exclusive means for determining the reasonableness of § 406(b) fees. The Court explained the lodestar method was primarily "designed to govern the imposition of fees on the losing party" in fee-shifting cases, therefore, its use in social security cases was not entirely compatible because the attorney's fees sought under § 406(b) are "paid directly with funds withheld from their clients' benefits awards[.]" *Id.* at 804 n. 13, 807; *see also*, *Short v. Sullivan*, 1992 WL 38404, *2 (N. D. Ill., filed Feb. 25, 1992) ("For every dollar a court approves in fees, a

---

[1] The Notice of Award dated November 5, 2005, does not set forth the actual amount of back pay that was awarded. (Petition, Serpa Decl., ¶5, Ex. C). However, the Notice indicates 25% would be withheld, and that the withholding amounted to $25,157.00 ($100,628.00 x .25 = $25,157.00).

[2] Under the lodestar method, a reasonable fee is calculated by multiplying the "number of hours reasonably devoted to each case . . . by a reasonable hourly fee." *Id.* at 797-98.

corresponding decrease in the claimant's award occurs. Thus, courts must balance two competing policies in reviewing attorneys' petitions for fees in social security cases.")

On the other hand, *Gisbrecht* did not find contingency fee agreements that capped fees at or below § 406(b)'s statutory ceiling of 25 percent of the back benefits awarded were reasonable *per se* or presumptively reasonable despite its finding that "[t]raditionally and today, 'the marketplace for Social Security representation operates largely on a contingency fee basis.'" *Id.* at 792, 804. Instead, *Gisbrecht* held § 406(b) instructs lower federal courts to make a reasonableness check that initially credits the contingency fee agreement within the 25 percent statutory ceiling and then places the burden upon the successful claimant's attorney to show "the fee sought is reasonable for the services rendered." 535 U.S. at 807. However, the type of check to be used was left to the sound discretion of the district courts since *Gisbrecht* found "[j]udges of our district courts are accustomed to making reasonableness determinations in a wide variety of contexts, and their assessments in such matters, in the event of an appeal, ordinarily qualify for highly respectful review." *Id.* at 808. Nonetheless, *Gisbrecht* provided some guidance by identifying the following examples as factors that, standing alone or in combination, warrant a reduction: (1) the result achieved; (2) counsel's "substandard" character of representation;[3] (3) delay by counsel (justifying a reduction to prevent counsel from profiting from the accumulation of benefits while the case is pending due to any foot-dragging); (4) "*if the benefits are large in comparison to the amount of time counsel spent on the case* [thereby resulting in a windfall], *a downward adjustment is similarly in order.*" ("windfall factor"); and (5) counsel's record of the hours spent representing the claimant and counsel's normal hourly billing rate for non-contingency work. *Id.* at 808 (emphasis added). Another factor to consider is the attorney's risk of loss in taking the case on a contingency basis. *Id.* at 805; *see Black v. Astrue*, No. 05-56628,

---

[3] *Gisbrecht* cites *Lewis v. Secretary of Health & Human Services*, 707 F.2d 246, 251 (6th Cir. 1983) in support of this factor.

2007 WL 1202886, *1 (9th Cir. (Cal.) Apr. 24, 2007).[4]

Recently, the Ninth Circuit affirmed two of the undersigned Magistrate Judge's orders that partly granted § 406(b) fee requests. *Crawford v. Astrue*, 554 F.3d 454 (9th Cir. 2008). In doing so, the *Crawford* majority approved of the *Gisbrecht* methodology and factors this Court has considered in ruling on § 406(b) motions. *Id*. 554 F.3d at 861-864. The *Crawford* majority also stated:

> We read *Gisbrecht* not to prohibit a district court from making lodestar-type calculations, but only from relying exclusively on such calculations and refusing to consider the contingency-fee agreement.
>
> \* \* \* \* \*
>
> . . . [W]hat Gisbrecht held was that "§ 406(b) does not displace contingency-fee agreements within the statutory ceiling; instead, § 406(b) instructs courts to review for reasonableness fees yielded by those agreements." The methodology by which a district makes such reasonableness determinations is for that court to select in the exercise of its sound discretion. In making these determinations, it would be preferable for a district court to begin with the contingency-fee agreement and decrease from there, rather than increase from a lodestar calculation. It does not seem to be an abuse of discretion, however, to use the latter approach as long as the court takes the necessary factors into consideration.

*Crawford*, 545 F.3d at 862.

In light of *Crawford*, this Court shall apply its same *Gisbrecht* methodology here.

**B.     The Contingency Fee Agreement**

The Petition is supported by a copy of the mutually executed contingency fee agreement between Plaintiff and Counsel's law firm. (Petition, Serpa Decl., ¶2, Ex. A.) The fee agreement establishes Plaintiff agreed to pay attorney fees corresponding to 25 percent

---

[4] Pursuant to FRAP 32.1, *Black* is cited for its persuasive value.

of the back benefits awarded for work before the Court -- the statutory maximum.   The Court's records do not reflect that Plaintiff has objected to the Petition, however, this is to be expected since the proof of service attached to the Petition establishes that Counsel never served his client with a copy of the Petition.   On the other hand, the record does not indicate the fee agreement was the product of fraud, coercion, or overreaching.

After the parties stipulated to remand, and this Court reversed the Commissioner's final decision and entered its judgment of remand, the SSA ultimately granted Plaintiff's application for Title II benefits and awarded back benefits to Plaintiff in the amount of $100,628.00.  Consequently, under the terms of the fee agreement, Plaintiff agreed to pay Counsel total attorneys fees of $25,157.00 ($100,628.00 x .25). The Commissioner withheld this amount of back benefits to cover Counsel's attorney fees in the event this Court finds no further reduction is warranted under *Gisbrecht*.

**C.     The Reasonableness Check**

**1.     Character of Representation**

Counsel represents that he has practiced social security law since 1996.  (Petition, Serpa Decl., ¶2.)  The Court takes judicial notice of its own records that disclose Counsel has represented about 275 social security claimants in this judicial district, including fifteen cases assigned to this Court.

After Counsel commenced this action on Plaintiff's behalf and the Commissioner filed his answer and the administrative record, the parties filed a stipulation for remand and the Court entered judgment remanding this case to the SSA.  (Stipulation and Order (dkt. #10); Judgment (dkt. #11).)

As discussed above, *Gisbrecht*, citing *Lewis*, a Sixth Circuit case, found a reduction of requested § 406(b) fees is warranted for substandard representation; that is, where some or all of counsel's efforts did not make a meaningful and material contribution towards the result achieved. *Id*. at 808.  The particular substandard representation in *Lewis* consisted of counsel's poor preparation for the initial administrative hearing before the Administrative Law Judge ("ALJ") (thereby necessitating further administrative and federal review) and

1  over billing for the services performed. 707 F.2d at 249. The Sixth Circuit found counsel
2  over billed his client by: (1) billing two hours of time to prepare a four-sentence brief with
3  the district court that "contained no case citation or any other manifestation of legal
4  research;" (2) billing two hours of time to read a two-page document filed by the Secretary
5  that did not have any case citations; and (3) billing two hours to prepare another four-
6  sentence document. *Id*.

7  As discussed above, Counsel's recap of his time shows he spent a total of 22.5 hours
8  working on this case. (Petition, Ex. D.)  Generally speaking, the overall amount of time is
9  not extraordinary or excessive.  In his Petition, Counsel states "Counsel has accumulated
10 many years of experience in the field of Social Security disability law, and accordingly did
11 not have to spend an inordinate amount of time educating himself in the intricacies of the
12 discipline in order to best represent Mr. Lind's interests in his claim." (Petition at 8:10-14.)
13 Consistent with this statement, the recap shows Counsel needed only .8 hours of time to spot
14 the relevant issues after reviewing the ALJ's decision.  However, the recap also reflects that,
15 after Counsel spent 10.2 hours to analyze the single volume administrative record and draft
16 Plaintiff's portion of the Joint Stipulation, he purportedly spent another 1.3 hours to research
17 the proper legal standards for evaluating the weight to be given to a treating physician's
18 opinion, plus another 2.3 hours to research the legal standard for evaluating a claimant's
19 subjective complaints.  The Court finds this 3.6 hours of research time is completely
20 excessive because a social security practitioner who has represented 275 social security
21 claimants since 1996 should be completely familiar with the legal standards for evaluating
22 a treating physician's opinion and a claimant's subjective complaints.  The Court also finds
23 the 16.7 hours of time ostensibly spent to analyze the administrative record and draft
24 Plaintiff's portion of the Joint Stipulation is excessive by at 2.7 hours because an
25 experienced social security attorney should not require any more than 14.0 hours -- two full
26 billable days -- to review the administrative record, conduct any necessary research, and
27 prepare Plaintiff's portion of the Joint Stipulation.

28 Accordingly, the Court finds the nature of representation was substandard to the extent

the time spent by Counsel is excessive by 6.3 hours, nearly a full day, and that the reasonable amount of time spent is 16.2 hours.

Accordingly, this factor warrants a reduction.

### 2. Results Achieved

The Court finds Counsel's efforts did make a meaningful and material contribution to the result achieved. Even though the Commissioner's final decision denying benefits was subject to a deferential standard of review, Counsel's efforts persuaded the Commissioner that a stipulated remand was warranted. The Court finds this factor does not warrant a reduction.

### 3. Counsel's Risk of Loss

As discussed above, Counsel states he has practiced social security law since 1996, and the records of this Court establish that Counsel has represented 275 social security claimants in this judicial district. Consequently, Counsel should have a substantial amount of statistical data available to show Counsel's risk of loss in taking this case on a contingency basis relative to the nature and scope of Counsel's overall practice. Relevant data would include: (1) counsel's personal success rate in social security cases verses other types of litigation matters handled by counsel; (2) the rate of success of other attorneys (if any) in counsel's firm; (3) the average time counsel spends per case in both successful and unsuccessful cases; and (4) the percentage of cases counsel accepts after a pre-filing merit assessment that is presumably made in compliance with Fed.R.Civ.P. 11(b). Yet, Counsel has not disclosed or proffered any of this data. Instead, Counsel simply makes broad and conclusory risk assertions that shed no light on the specific risk of loss that was incurred in taking this particular case.

On the other hand, this Court finds the following factors demonstrate Counsel incurred little risk of loss in taking this case: (1) this case did not involve any novel or complex issues of fact and law; (2) Counsel did not incur any risk of non-payment because, as *Gisbrecht* recognized, the maximum statutory amount of § 406(b) fees that can be recovered are withheld from a portion of the benefits awarded to the claimant. *Gisbrecht*, *id*. at 804 n.13;

1  (3) Counsel's representations about his years of practice and the number of social security
2  cases indicate Counsel has accepted an approximate average of 21 social security cases a
3  year (275 ÷ 13 years of practice = 21.15 cases/year), therefore, it is reasonably clear that
4  social security cases represent a small amount of Counsel's overall practice; and (4) Counsel
5  did not incur any risk in the primary costs advanced, e.g., the $150.00 filing fee required by
6  28 U.S.C. § 1914(a), because Counsel required Plaintiff to pay fees and expenses in the
7  amount of $200.00. (Petition, Serpa Decl., ¶2, Ex. A).

8  Based upon the foregoing, the Court finds this factor warrants a reduction in the
9  requested fees.

10  **4.     Delay**

11  The complaint was filed on October 16, 2003. In accordance with the Court's Case
12  Management Order (dkt. #4), the certified administrative record and answer were filed on
13  March 22, 2004. The parties submitted the Stipulation and Order for Remand on June 7,
14  2004, and, Judgment was entered on June 9, 2004. Therefore, the Court finds this is not a
15  situation where the amount of back benefits accumulated due to any excessive delay
16  attributable to counsel.

17  No reduction is warranted for this factor.

18  **5.     Windfall Factor**

19  *Gisbrecht* instructs a downward adjustment is in order "if the benefits are large in
20  comparison to the amount of time counsel spent on the case." *Id*. at 808. Although
21  *Gisbrecht* did not expressly say so, this Court finds the amount of time used to compute this
22  factor must consist of the reasonable amount of time spent, not the actual time spent where,
23  as here, the Court finds the actual amount of time spent was excessive under the
24  circumstances. Any other interpretation would undermine the reasonableness check. For
25  example, allowing attorneys to use an inflated figure would artificially reduce the *de facto*
26  hourly rate and mask the true degree of the windfall. The net effect would encourage over
27  billing. This concept is aptly illustrated here.

28  Here, Plaintiff was awarded $100,628.00 of back benefits, 25 percent of which is

$25,157.00; the statutory maximum. If Counsel had continued to seek this maximum fee, and assuming all 22.5 hours of time spent was reasonable, this would yield a *de facto* hourly rate of $1,118.08 ($25,157.00 ÷ 22.5). However, this Court has concluded 16.2 hours is the reasonable amount of time spent, which yields a *de facto* hourly rate of $1,552.90, a rate that is $434.82 higher than the *de facto* rate using the inflated time.

In apparent recognition the Court would find a request for the statutory maximum fee excessive, Counsel has acted in good-faith by voluntarily reducing his gross § 406(b) fee request to $11,857.00, slightly less than one-half of the statutory maximum. This still yields a *de facto* hourly rate of $526.97 using the 22.5 hours of time spent and a higher *de facto* hourly rate of $731.91 using the 16.2 hours of reasonable time spent. Regardless, a fee award of $11,857.00, which translates to a *de facto* hourly rate of $731.91 based upon the reasonable time spent, still results in a windfall to a Court that is very "accustomed to making reasonableness determinations in a wide variety of contexts." *Gisbrecht*, *id.* at 808.

Accordingly, the Court finds this factor warrants a reduction.

### 6. Hours Expended and Attorney's Normal Billing Rate

Counsel has provided a record of the time he spent working on this case but he has not disclosed whether he has a normal hourly billing rate for non-contingent work that his firm charged its clients during the same period of time that he rendered services to Plaintiff in this case. The only evidence in the record of a reasonable hourly rate is gleaned from the parties' stipulation for $3,000.00 in EAJA fees and the Court's related Order thereon, which appears to be based upon the actual time spent in this contingency case. Regardless, using these figures, the record discloses Counsel's stipulated hourly rate for the relevant period is $133.33 ($3,000.00 ÷ 22.5); roughly the statutory EAJA fee that Congress has determined to be a reasonable hourly rate in these cases. Consequently, when compared to the $731.91 *de facto* hourly rate derived from the reasonable time spent, Counsel is basically asking his client to pay him § 406(b) fees in an amount that is roughly 5.5 times greater than Counsel's stipulated hourly rate ($731.91 ÷ 133.33 = 5.48).

Accordingly, this factor warrants a reduction.

**7.  The Amount of Reasonable § 406(b) Fees**

*Gisbrecht* does not provide any standard for determining the amount of § 406(b) fees that should be awarded where the district court finds a reduction is warranted to prevent a claimant from being overcharged.

In *Ellick v. Barnhart*, 445 F. Supp. 2d 1166 (C.D. Cal. 2006), the court conducted an extensive national survey of post-*Gisbrecht* cases in order to glean what, if any, uniform method had emerged. The forty-three reported cases found by the court fell into three distinct groups.  In the first group, which consisted of slightly more than half of the cases (23), the courts granted fee requests in the full amounts of the statutory ceiling.  *Id*. at 1168-70.  The second group had eight cases where the approved fees varied in the amounts but the requested amounts were below the 25 percent statutory ceiling.  *Id.* at 1170.  The third group represented roughly 30 percent of cases (12) where the courts found a reduction in the requested fees was warranted and the decisions var[ied] significantly in the manner" used to reduce the fees.  *Id*. at 1171.  The fees awarded in this third group were "in amounts greater than the amounts that would have been recovered under counsel's standard hourly rates, but less than the requested 25 percent of past-due benefits." *Id*. at 1171.  The approved *de facto* hourly rates also ranged between $180.95 to $977.20.  *Id*.  Overall, *Ellick* further found that attorneys were being compensated at anywhere from 1.01 to 6.55 times their normal billing rate. *Id*. at 1169-70, 1173.

*Ellick* found its survey suggested there was no uniform approach but that it appeared "most (but not all) of these courts have drawn on a traditional lodestar analysis in evaluating whether a full contingent percentage recovery would amount to a "windfall," within the meaning of *Gisbrecht*." *Id.* at 1172.  The court found the requested fee, which would result in a *de facto* hourly rate of $933 or an amount that was 4.24 times the attorney's normal billing rate, was excessive, therefore, the court reduced the requested fees to a *de facto* hourly rate of $550 or 2.5 times the attorney's normal billing rate, apologizing for the "regrettable imprecision of its analysis." *Id.* at 1172-73.

In light of the foregoing, the Court finds Counsel's request for § 406(b) fees of

$11,857.00, is not reasonable and that Counsel has not met his burden of showing that a further reduction is not warranted. To the contrary, the Court finds three of the *Gisbrecht* factors warrant a further reduction. Despite citing *Gisbrecht* in his Petition, Counsel has not voluntarily identified the normal hourly rate that he charged clients in non-contingency cases during the relevant period. The only evidence in the record of a reasonable hourly rate consists of the stipulated hourly rate for the EAJA fees, which is about $133.33 per hour. Under the circumstances, the Court finds a reasonable *de facto* hourly rate for the work performed is $325.00, an amount that is still slightly more than 2.4 times the stipulated EAJA rate and reasonably compensates Counsel for the nominal risk of loss and his reasonable efforts. Accordingly, Counsel is awarded § 406(b) fees in the total gross amount of $5,265.00 ($325/hour x 16.2 hours), less $3,000.00 for the EAJA fees already paid to Counsel, for a net fee award of $2,265.00.

### III. CONCLUSION

Based upon the foregoing considerations, the Petition is granted in part; net fees under § 406(b) in the amount of $2,265.00, shall be paid out of the sums withheld by the Commissioner from Plaintiff's benefits.

IT IS SO ORDERED.

DATED: February 25, 2009

                                            /s/ Arthur Nakazato
                                            ARTHUR NAKAZATO
                                  UNITED STATES MAGISTRATE JUDGE